UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURIE CROSSLEY,

      Plaintiff,                                  CIVIL ACTION NO. 16-cv-11879

      v.                                         DISTRICT JUDGE NANCY G. EDMUNDS

MINNESOTA LIFE INSURANCE        MAGISTRATE JUDGE MONA K. MAJZOUB
COMPANY,

      **Defendants.**

_____/


**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO TERMINATE OR LIMIT DEFENDANT'S DEPOSITION OF PLAINTIFF LAURIE CROSSLEY [13] AND DENYING DEFENDANT'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 30(d)(2) [20]**

This matter comes before the Court on two competing motions concerning Defendant Minnesota Life Insurance Company's Deposition of Plaintiff, Laurie Crossley: Plaintiff's Motion to Terminate or Limit Defendant's Deposition of Plaintiff Laurie Crossley (docket no. 13), and Defendant's Motion for Sanctions Under Fed. R. Civ. P. 30(d)(2) (docket no. 20). Defendant filed a Response (docket no. 21) to Plaintiff's Motion, and Plaintiff filed a Response (docket no. 24) to Defendant's Motion. Defendant also filed a Reply in support of its Motion. (Docket no. 27.) The motions have been referred to the undersigned for consideration. (Docket nos. 18, 22.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

As a preliminary matter, the Court notes that in Plaintiff's Motion, she fails to indicate that she sought concurrence from Defendant prior to filing the motion in accordance with Eastern

District of Michigan Local Rule 7.1(a). Defendant does not address Plaintiff's efforts to seek concurrence in its Response. "Seeking concurrence from the opponent is a mandatory directive of the Local Rules of this District." *U.S. v. Ramesh*, No. 02-80756, 2009 WL 817549, at *6 (E.D. Mich. Mar. 26, 2009). While the Court is inclined to deny Plaintiff's Motion on this basis, it will instead decide Plaintiff's motions on the merits.

I. **BACKGROUND**

Plaintiff's husband died following a motorcycle accident in 2015. Plaintiff filed a claim on her late husband's life insurance policy with Defendant, Minnesota Life Insurance Company, but Defendant denied the claim, citing 1) hospital records which Defendant argues show that the decedent was intoxicated at the time of the crash, and 2) the decedent's life insurance policy, which provides that:

> In no event will we pay a benefit where your loss or injury is caused directly or indirectly by, results from, or there is contribution from, any of the following:
> . . . .
>
> (6) motor vehicle collision or accident where you are the operator of the motor vehicle and your blood alcohol level meets or exceeds the level at which intoxication is defined in the state where the collision or accident occurred, regardless of the outcome of any legal proceedings connected thereto[.]

(Docket no. 20-3 at 4.)

The parties convened for Defendant's deposition of Plaintiff on January 25, 2017. (Docket no. 13 at 1.) The dispute concerning the deposition arose when counsel for Defendant began questioning Plaintiff about medical records; in particular, a record from one of the decedent's treating physicians, Dr. David Lang. (Docket no. 20-5.) Dr. Lang wrote that he received the decedent's history from Plaintiff, and that the decedent's "social history," includes "[e]ight beers per day." (*Id.* at 2.) The following series of exchanges among Defense counsel (Mr. Asmar), Plaintiff, and Plaintiff's counsel (Ms. Trikes) occurred:

Q. And [the document] also says "Eight beers per day." Do you see that?

A. Yes.

Q. Okay. And this document says that this history is taken from you.

> Ms. Trikes [Plaintiff's counsel]: I'm going to object to form and foundation.

Q. You can answer my question.

A. I see that, yes.

Q. Okay. I had asked you whether you told someone at the hospital that your husband drank eight beers a day, and you said no; right?

A. I don't recall saying that.

Q. Okay. So now you don't recall saying that. That's different than a no.

A. No, I did not say that. I don't recall saying that.

Q. "I did not say that" and "I don't recall saying that" are two different things. Okay. Somebody at the hospital, which appears to be Dr. Lang, wrote down that you told him that your husband drank eight beers per day; correct?

> Ms. Trikes: I'm objecting to that; form and foundation. And that is not a correct statement. She cannot agree that David Lang wrote that down.
>
> Mr. Asmar [Defendant's counsel]: I understand your objection. Speaking objections—
>
> Ms. Trikes: I will not have her answer that question. It's a trick question. You have no proof that it was David Lang who wrote that down.
>
> Mr. Asmar: I'll rephrase the question for her, then.

Q. David Lang—it says "Dictating: David Lang." Right?

A. Yes.

Q. See that on top? Okay. Flip to the next page. Do you see the top there, "Authenticated by David Lang, D.O., on September 30, 2015." Right?

3

A.      Yes.

. . . .

Q.      Okay. Mr. Lang authenticated this document.

        Ms. Trikes: Objection; form and foundation.

Q.      You can answer the question.

        Ms. Trikes: She can't answer that question. She can say what the record says. I'm not going to have her vouch for a medical record. That's a trick question. You can ask her what the record says. You can't have her vouch that David Lang authenticated this.
        . . . .

        Mr. Asmar: I understand your objection.

        Ms. Trikes: No. We're not going to go there. We're not going to talk about what the records do or do not say.

        Mr. Asmar: Lillian [Ms. Trikes], she has an obligation to answer my question.

        Ms. Trikes: Not that question. Not that question.

        Mr. Asmar: Can I speak, please?

        Ms. Trikes: No. Here's what I'm going to say first: My client is here to answer fact questions about what she knows, personal knowledge. She's not sitting here to . . . answer questions regarding a record created by somebody else. She has to talk about personal knowledge. This isn't going anywhere relevant, . . . and, therefore, I'm going to stop the questioning about the information that's not within her personal knowledge.

        Mr. Asmar: Your objection—

        Ms. Trikes: We're not going to answer those questions. We will go—
        . . . .

        Mr. Asmar: I'll ask another question, then. How about that?

        Ms. Trikes: I'll see. It has to be based on personal knowledge.
        . . . .

Q.   Ms. Crossley, this document, Exhibit 3, in Social History says "Eight beers per day." Correct?

    Ms. Trikes: That is not based upon her personal knowledge.
    . . . .

Q.   You may answer the question.

    Ms. Trikes: No, she may not.

    Mr. Asmar: You're instructing the witness not to answer the question.

    Ms. Trikes: That's a stupid question, and you've already asked her that.

    Mr. Asmar: No.
    . . . .

    Mr. Asmar: Lillian [Ms. Trikes], you can object to that as well, but I want her to answer my question.
    . . . .

    Ms. Trikes: You know what? I'm her attorney. I can read the document. She's not—it's not based upon her personal knowledge. Move on. You said you were going to move on. You're not moving on.
    . . . .

Q.   We're still on Exhibit 3 here. I want you to flip to page 3 of this document. . . . If you look at page 3, and I'm looking at number 3 there on the top, it also says "Alcohol Abuse." Right?

    Ms. Trikes: If you're just asking her to verify the words on the page, that's an improper part of this deposition. We can read. Your attorney will stipulate that this record says that. That's not a— you know what?

Q.   You can answer the question, Ms. Crossley.

    Ms. Trikes: Wait. What do you mean she can answer the question?

    Mr. Asmar: She can read and she can answer my question.

Ms. Trikes: And that's not a proper question for a deposition. Move on. She can read a document, but that has nothing to do with personal knowledge.

Mr. Asmar: I understand your objection. You've made it—

Ms. Trikes: You know what? We're going to walk. You want to call the judge. We're going to walk. We're not going to sit here and read medical records into evidence through my client.
. . . .

Mr. Asmar: Are you going to walk away from the dep right now?

Ms. Trikes: I sure am. Let's go Laurie.
. . . .

Mr. Asmar: . . . . I'd like to put on the record . . . that despite my attempts to be reasonable with Ms. Trikes, she is now calling the deposition over because I've asked Ms. Crossley questions regarding medical records, and I asked her whether these medical records state certain things, and Ms. Trikes has called the deposition claiming that I cannot ask her these types of questions. Ms. Trikes certainly has the ability to make objections for the record. She does not have the right to instruct her witness to not answer these types of questions. She only has a right to instruct a witness not to answer questions on the basis of privilege. That is it.

Ms. Trikes: I have the right to call the deposition based upon oppressiveness and harassment. Actually, it's subterfuge, trying to get my client to verify the accuracy of medical records. She had no part in creating them. You've certainly asked her about whether she said that statement. She answered . . . your question on that. With that, I'm done.
. . . .

(Ms. Trikes exits the deposition.)

Mr. Asmar: Let the record reflect that Ms. Trikes was yelling throughout this deposition as to these objections. Before I began questioning Ms. Crossley about Exhibit No. 3, Ms. Crossley—Ms. Trikes took a break, and after the break she became extremely heated during this deposition and has now called the deposition off. I have told her that I will call the judge, and she said she's already given me a chance to call the judge and that the deposition is now over.

(Docket no. 21-2 at 72-74, 76-80, 82-86.)[1]

Plaintiff and her counsel then left the deposition, and filed Plaintiff's Motion to Terminate or Limit Defendant's Deposition of Plaintiff Laurie Crossley the following day. (Docket no. 13.) Defendant filed its Motion for Sanctions approximately two weeks later. (Docket no. 20.)

## II. GOVERNING LAW AND ANALYSIS

Plaintiff relies upon Federal Rule of Civil Procedure 30(c) and 30(d)(3), which provide, in relevant part:

> (c) Examination and Cross-Examination; Record of the Examination; Objections; Written Questions.
> (1) *Examination and Cross-Examination.* The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615. . . .
>
> (2) *Objections.* An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).
> . . . .
>
> (d) Duration; Sanction; Motion to Terminate or Limit.
> . . . .
>
> (3) *Motion to Terminate or Limit*
> (A) *Grounds.* At any time during a deposition, the deponent or a party may move to terminate it or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so

---

[1] Both parties cite additional parts of the deposition transcript. The Court reviewed the entire transcript, and considered all of the parts cited by the parties, even if those parts are not directly quoted above.

> demands, the deposition must be suspended for the time necessary to obtain a court order.
>
> (B) *Order*. The court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c). If terminated, the deposition may be resumed only by order of the court where the action is pending.
>
> (C) *Award of Expenses*. Rule 37(a)(5) applies to the award of expenses.

Fed. R. Civ. P. 30(c), (d)(3).

Defendant specifically seeks sanctions against Plaintiff or her counsel, and relies on Federal Rule of Civil Procedure 30(d)(2), which gives the Court the authority to award sanctions, including "reasonable expenses and attorney's fees incurred by any party," against any "person who impedes, delays, or frustrates the fair examination of the deponent." Defendant also cites the following Eastern District of Michigan Civility Principles:

> An attorney's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms.
> . . . .
>
> 20) We will not engage in any conduct during a deposition that would not be appropriate in the presence of a judge.
>
> 21) We will not obstruct questioning during a deposition or object to deposition questions unless appropriate under the applicable rules.

(Docket no. 20 at 16–17.)

The undersigned has reviewed the entire deposition transcript and finds that both parties acted inappropriately. Plaintiff's counsel used inappropriate language, took an excessive number of breaks, made long-winded objections, and terminated the deposition without indicating on the deposition record that she intended to file a Rule 30(d) motion concerning the questions she did not believe her client should answer. Defense counsel acted in bad faith by insisting on having Ms. Crossley read parts of the decedent's medical record into the deposition record despite the

8

fact that Ms. Crossley obviously did not create the records, and despite Plaintiff's counsel's repeated request that he move on and inquire into matters within Ms. Crossley's personal knowledge.

During the deposition, Ms. Crossley testified concerning her knowledge of her husband's alcohol use (*see* docket no. 21-2 at 61), and she denied making the statement to Dr. Lang that her late husband drank eight beers per day (*id.* at 62). Plaintiff's counsel permitted Defense counsel to inquire into these matters without any disruption. The dispute only arose when Defense counsel began asking Ms. Crossley to essentially confirm all of the information written in the medical document prepared by Dr. Lang. (*See id.* at 73.) Defense counsel obviously believed Plaintiff *did* make the statement to Dr. Lang that Plaintiff's late husband drank eight beers per day, and it appears that Defense counsel wanted Ms. Crossley to admit as such. Defense counsel should have simply moved on to a different topic.

Defendant argues that it was proper to inquire into matters outside of Ms. Crossley's personal knowledge during the deposition because "lack of personal knowledge" is an evidentiary objection for trial, and information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see also* docket no. 21 at 6. Defendant correctly defines the scope of discovery, but it is nevertheless improper to force a deposition witness to confirm the accuracy of medical records, or to simply have the witness read the medical records into the deposition record, when the witness did not produce the records. Even in a deposition, there must be an appropriate foundation for a witness's testimony.

Defendant also argues that, in any event, it was improper for Plaintiff's counsel to terminate the deposition or to not allow Ms. Crossley to answer questions. Defendant argues that, under Rule 30(c)(2), the only basis for instructing a deponent not to answer a question is if

9

the questions posed seek information protected by a privilege or court order, or if counsel for the deponent states on the deposition record that she intends to file a Rule 30(d)(3) motion. Otherwise, Defendant argues, "'the examination still proceeds; the testimony is taken subject to any objection.'" (Docket no. 21 at 6 (quoting Fed. R. Civ. P. 30(c)(2).) The problem with Defendant's argument is that Plaintiff did file her Motion (docket no. 13), the day after she terminated the deposition. Plaintiff's counsel should have explicitly stated her intention to do so on the deposition record; however, the Court does not find that Plaintiff's counsel's failure to do so warrants sanctions, even in light of the other behavior about which Defense counsel complains. In short, Plaintiff counsel's conduct did not impede a "fair examination." Fed. R. Civ. P. 30(d)(2).

For these reasons, the Court will allow the deposition to proceed, with each party responsible for its own fees and costs. The Court will order Defendant to limit questioning of Plaintiff to matters within Plaintiff's personal knowledge (which shall not include having Plaintiff read portions of the decedent's medical record into the deposition record), thereby granting Plaintiff's Motion. The Court will also grant Plaintiff's request and order that the deposition be limited to "relevant" matters, while noting that the scope of discovery is traditionally quite broad and that Defendant is not limited to questioning Plaintiff concerning matters that are "relevant" as defined by the Federal Rules of Evidence. Fed. R. Civ. P. 26(b)(1); *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). The Court admonishes Plaintiff's counsel to follow the cited civility principles in any further deposition of Plaintiff or any other witness. The Court finds that the circumstances make an award of expenses in favor of either party unjust. *See* Fed. R. Civ. P. 30(d)(3)(C); 37(a)(5).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Terminate or Limit Defendant's Deposition of Plaintiff's Laurie Crossley [docket no. 13] is **GRANTED** as set forth above. If Defendant wishes to continue Plaintiff's deposition as limited by the Court, Defendant's counsel will properly re-notice and complete the remainder of the deposition at a mutually convenient location, date and time within thirty (30) days of entry of this Opinion and Order.

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions under Fed. R. Civ. P. 30(d)(2) [docket no. 20] is **DENIED**. Each party is responsible for their own costs and fees associated with filing the instant motions, with Plaintiff's first deposition, and with any continuation of Plaintiff's deposition.

### NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: April 19, 2017    s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated: April 19, 2017    s/ Lisa C. Bartlett
Case Manager